UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | Case No. 23-cr-424-2 (ACR) |
| : | |
| IROC SHANE BUNCH, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of its request and recommendation that the Court sentence the defendant Iroc Shane Bunch to 121 months imprisonment, followed by five years of supervised release, and a $100 Special Assessment.

**PROCEDURAL FACTS**

On December 5, 2023, a federal grand jury empaneled in the District of Columbia returned a two count indictment charging the defendant with Count 1) Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, and 100 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl Analogue in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi); and Count 2) Unlawful Distribution 10 grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl Analogue, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi).

On August 27, 2024, the defendant pleaded guilty to Count One Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, and 100 Grams or More of a Mixture and Substance Containing

1

a Detectable Amount of Fentanyl Analogue in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi), pursuant to a plea agreement with the government.

## FACTUAL BACKGROUND

The defendant has admitted under oath during the plea hearing, as further acknowledged in the signed Statement of Offense, to the following factual background in support of his plea (ECF No. 34):

Beginning in at least December 2022, the defendant knowingly and intentionally agreed with codefendant Zachary Bell and others to participate in a conspiracy to acquire, possess, and distribute various narcotics, including fentanyl, as the darknet vendor "PillianVillian." Darknet markets are hidden commercial criminal websites, requiring a specific browser ("Tor") that allows anonymous communications, and they operate on a portion of the Internet that is often referred to as the TOR network, the dark web, or the darknet. On the dark web, criminal vendors sell illegal and contraband goods and services such as narcotics, child porn, stolen credit cards, and hacking tools and services.

PillianVillian (the defendant and Bell) sold narcotics through mass marketing on the darknet market sites Nemesis, Bohemia, and Tor2Door, and made sales through encrypted messaging applications such as Telegram and Signal. The conspiracy lasted until the defendant's arrest in April 2023. As part of the conspiracy, the defendant sold narcotics in a coordinated manner with co-conspirators over the internet to acquire, possess, and distribute various narcotics to customers on a variety of internet platforms.

The defendant met Bell over an internet messaging application. The defendant's username on Telegram and Signal was "MasterZaza" and Bell's was "7Distro." "Zaza" is slang for high grade marijuana. The defendant and his codefendant hid their criminal activities by using

encrypted messaging apps, anonymous web browsers, dark net web sites, cryptocurrency, and specialized packaging intended to disguise the contents of their shipments. As business partners, they worked together to acquire, possess, and distribute narcotics illegally for at least 5 months.

Bell acquired counterfeit M30 pills for resale as PillianVillian from a vendor known to law enforcement on a Telegram channel. Telegram channel is a means of sharing encrypted content with a broader audience. Only the administrator can post to a Telegram channel, but many people can subscribe to it and read it. Telegram channel can be public or private. Bell would give the defendant instructions and pay the defendant for his work in the conspiracy.

The defendant rented a garage at 527 Baltimore Street, Hanover, PA where both men stored various narcotics. The defendant used fake IDs to rent UPS mailboxes to receive shipments of narcotics, specifically Fentanyl and counterfeit Xanax bars. The defendant picked up multiple packages containing narcotics. Bell instructed the defendant as to what to include in each package, who to mail it to, and where. The defendant would then package, label, and ship the narcotics to various recipients as directed by Bell often using a USPS blue box outside of the Hanover Post Office, located at 18 High Street, Hanover, PA, 17331. The defendant used Uber, a ride share service, to transport the narcotics from the garage to the shipping location.

The defendant and Bell knew that the M30 pills were not oxycodone, as advertised on the markets, but were in fact fentanyl and fentanyl analogues. Between December 2022 and April 2023, members of the conspiracy shipped over 600 parcels containing narcotics from Hanover to law enforcement and others throughout the United States including to Washington, DC. In total, law enforcement purchased and seized 724.21 grams of p-Fluorofentanyl, an analogue of fentanyl, and 5.99 grams of fentanyl, 1,155 pills containing bromazolam, and 560 pills (+20 partial pills) containing 4′-chloro deschloroalprazolam.

On April 24, 2023, York County Probation conducted home visit on the defendant at 60 Knoll Lane, York, PA and found marijuana in plain view. They obtained a search warrant, conducted a search at his home, and found narcotics, including mushrooms, marijuana, THC vape cartridges, and "Xanax Bars" (counterfeit Alprazolam pills containing Bromazolam). York County Police also found $3,133 in cash, ammunition, packaging materials and equipment, and fake IDs. The IDs were in the names of customers of two UPS Stores in York, PA, and a third UPS Store in Shrewsbury, PA. All the fake IDs had the defendant's picture on them.

Two days later, on April 26, 2023, law enforcement searched the garage at 527 Baltimore Street, Hannover PA. Bell was found exiting the garage, holding a bag containing digital scales, packaging for mail, and mylar bags. Inside the garage, law enforcement found 6,320 pills with a net weight of 680 grams. Lab testing by the Pennsylvania State Police Bureau of Forensic Services later determined that the pills contained 680g of Fluorofentanyl, an analogue of fentanyl, and Fentanyl.

The defendant also created Snapchat video where the defendant acknowledges that he knows he could be killing people (by selling fentanyl), but money is money, and he needs it more than others. In another Snapchat video, the defendant described how he packaged and labeled the narcotics he distributed, and that he knew that he could have killed 50 people with those "percs." The defendant's role in the conspiracy included the distribution and the possession of fentanyl and fentanyl analogue.

**GUIDELINES CALCULATION**

The government agrees with the initial calculation by United States Probation Officer Kristina Centanni's that based on a Total Offense Level of 35 (ECF No. 39 ¶ 48 ("PSR"), and a Criminal History Category of II (*Id*. ¶ 52), the defendant's Sentencing Guidelines range, without

the benefit of the Safety Valve, is 188-235 months (*Id*. ¶ 92). Further, the government agrees that the defendant appears to be eligible for a Safety Valve reduction pursuant to USSG § 5C1.2 and 18 USC § 3553(f), reducing the estimated offense level to 31 and the guideline range to 121-151 months. Pursuant to the plea agreement of the parties, and in consideration of the factors set forth in 18 U.S.C. § 3553(a) and the arguments advanced in this memorandum, the government respectfully requests that the Court sentence the defendant to 121 months imprisonment and five years of supervised release.

## **SENTENCING RECOMMENDATION**

The Court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007). These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a). A consideration of these factors supports the government's recommended sentence of 121 months imprisonment and five years of supervised release.

### Nature and Circumstances of the Offense

The serious nature of the defendant's criminal conduct supports the imposition of the recommended sentence. The defendant, along with his codefendant, engaged in a large-scale, internet based, narcotics trafficking conspiracy. Over a short period of months, the defendant and

his coconspirator shipped over 600 parcels containing significant amounts of various narcotics, including fentanyl, all over the United States, including to law enforcement in Washington, DC.

As the Court is undoubtedly aware, a single pill of fentanyl can be deadly.[1] The total amount of fentanyl the defendant distributed is significant, and the lethality of his conduct cannot be overstated. While the government cannot link any overdose deaths to this conspiracy, it is reasonable to conclude that there was significant harm visited on the lives of users and their families by the defendant's conduct.

The nature and circumstances of this offense and the defendant's blatant and intentional disregard for the law and harm to his customers—all for easy money—warrants the government's requested sentence.

Defendant's History and Characteristics

The defendant is 24 years old and has a criminal history that includes a weapons possession and marijuana concentrate distribution. These offenses occurred about a month apart, when the defendant was 21 years old. As a result, the Pennsylvania State Court admitted him to drug court presumably considering his age, lack of other criminal history, and amenability for rehabilitation. It was in this context, while engaged with a treatment court, that the defendant engaged in the criminal conduct at issue in this matter. It is remarkable that he was given such an opportunity for diversion and rehabilitation and chose to instead escalate his criminal activity.

That said, to the defendant's credit, he has accepted responsibility in this case, and thereby saved the Court and the government resources that would be spent preparing for trial, while knowing the significant consequences that await him.

---

[1] *See* Drug Enforcement Administration, *One Pill Can Kill*, https://www.dea.gov/onepill (last visited March 14, 2025) ("2mg . . . can be enough to kill an average American.).

Need for the Sentence Imposed

The government's recommended sentence is also justified by the need to protect the public from the defendant, who over the course of the fentanyl conspiracy, actively distributed significant quantities of fentanyl in lethal amounts throughout the country. A sentence of 121 months imprisonment and five years of supervised release reflects the seriousness of the offense and will serve to protect the community from the deadly distribution of fentanyl. This sentence also strikes the proper balance between the grave nature of the defendant's actions in this case on the one hand, and acknowledgement that the defendant's criminal history—though not unblemished—does not reflect violent behavior. In addition, while serving this sentence, the defendant would have the opportunity to pursue educational and vocational training and participate in other programs that will hopefully help him lead him a more productive life after his release.

Need to Avoid Unwarranted Sentence Disparities

A term of imprisonment of 121 months and five years of supervised release is appropriate, and not disparate from other cases of similar ilk. 121 months appears to be nearly identical to the median length of imprisonment for similarly situated offenders. ECF No. 39 ¶ 119 ("PSR")

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendant to 121 months imprisonment, to be followed by five years of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

        Respectfully submitted,

        Edward R. Martin, Jr.
        United States Attorney
        D.C. Bar No. 481866

Dated May 9th, 2025

    By: */s/ Daniel Seidel*
        Daniel Seidel
        Assistant United States Attorney
        CO Bar No. 41521
        Daniel.Seidel@usdoj.gov
        (202) 252-7619